Simon, J.
The plaintiff, having obtained judgment against the defendants, in solido, for the sum of $1210 07, with interest, issued a writ of fieri facias, by virtue of which the Sheriff seized in the hands of Junius Amis & Co., all the goods, chattels, rights, credits, moneys, and property of any kind, which they might have in their possession or under their control, belonging to the defendants or either of them; whereupon said plaintiff, acting under the 13th section of an act of 1839, (Acts, p. 166,) filed his petition, representing that he has good reason to believe, that Junius Amis &, Go., a commercial firm composed,of Junius Amis, Samuel But- *446 terworth and Francis Leach, have in their possession, or under their control, rights, property or credits sufficient to pay the amount due him, inasmuch as Theophilus Freeman, one of the defendants, is one of the firm of Junius Amis & Go. He, therefore, prayed, that Junius Amis, Samuel Butterworth arid Francis Leach, composing the commercial firm of Junius Amis & Co., might be made party garnishees, that they might be cited to appear and answer separately, and each for himself, the annexed interrogatoriesiraopeiz court, under oath, in ten days from the service thereof; and that, in default thereof, judgment might be entered up against said firm for the amount of the judgment and interest, &c. An order, was accordingly granted by the Judge, a quo, directing the interrogatories to be answered by the garnishees as prayed for, and according to law.
Copies of the petition, interrogatories and citation were served upon the three garnishees, in the following manner, as appears from the Sheriff’s returns: those for Junius Amis, were left at his office in Camp street with his partner and agent, Francis Leach, he, Amis, being absent; those for Samuel Butterworth, were also left at his office with his partner and agent, Francis Leach, he, Butterworth, being absent; and those for Francis Leach, were served upon him personally.
Francis Leach answered the plaintiff’s interrogatories in writing, negativing completely the latter’s allegations of Freeman’s being a partner in the firm of Junius Amis & Co., of his having any rights, credits, moneys or property of any kind in the possession, or under the control of said firm, or of any of the members thereof; and of his, Freeman’s, having any interest in any plantation and slaves purchased by any member of said firm. He, Leach, subsequently filed an affidavit, in which he stated that the two other members of his firm were absent beyond the State at the time the citations were issued ; that they were expected to remain absent until the fall, (this proceeding was had in June, 1844,) and that they cannot have a knowledge of this proceeding except from other sources, &c.
In August, 1844, Theophilus Freeman was arrested at the suit of the plaintiff; but the writ of arrest having been dismissed, another proceeding was had against him by said plaintiff, in *447 September, by virtue of which Freeman was again arrested, and the writ of arrest was again set aside, on the motion of the plaintiff’s counsel.
In November following, a judgment by default was taken against Amis and Butterworth, which was subsequently made final, and they were condemned to pay each the amount of the judgment, with interest and costs, on the only ground, that having been cited to answer the plaintiff’s interrogatories, and having failed to do so, the same should be taken as confessed. A motion for a new trial was made by the two garnishees on divers grounds, supported by the affidavit of Butterworth, contradieting the statement made by the Sheriff in his return, of Francis Leach being his agent, and denying his ever having had at any time any funds in his hands, either as a partner of the firm of Junius Amis & Co., or individually, belonging to Freeman or to the defendants ; but the Judge, a quo, being of opinion that the plea of want of citation can only be made available in an action of nullity, overruled the motion, and signed the judgment from which the garnishees have appealed.
The thirteenth section of the act of 1839, (B. & C.’s Digest, p. 458, § 3,) under which this proceeding was had, enables a plaintiff who has applied for a writ of fieri facias against tire defendant, to garnishee the latter’s property in the hands of third persons, and to cause such third persons to be cited to answer under oath, such interrogatories as may be propounded to them, fyc., in the same manlier, and with the same regulations, as are provided in relation to garnishees in cases of attachment; and such third persons are bound to answer in the same manner, and are liable for their neglect or refusal to answer, and their answers may be disproved in the same manner, as those of garnishees. Code of Pract. art. 263. It follows, therefore, that although this law was enacted for the purpose of facilitating the recovery of just debts, and of preventing debtors in bad faith from screening their property, and particularly their personal effects, from the pursuit of their creditors, and thereby avoiding their being levied on by virtue of executions issued in due course of law, it should not be made to operate an injustice on innocent third persons, against whom judgment creditors *448 think it proper or necessary to avail themselves of it, and that, as in cases of attachment, the proceedings pointed out by law, should be strictly complied with. 3 La. 18. 8 lb. 586. 3 Rob. 232.
Now, among the different informalities which the appellants’ counsel has urged in the argument of this cause, as existing in the proceedings which preceded the rendering of the judgment complained of, and as sufficient to cause it to be annulled, there is one, which, in our opinion, destroys the very foundation of said judgment, nay, the only ground upon which it was rendered. It is this: The plaintiff, in his petition, has prayed, that each of the three garnishees be ordered to answer his interrogatories in'open court in ten days from the service thereof, and the Judge, a quo, accordingly ordered that they should be answered as prayed for, and according to law. Thus, the appellants, supposing they had been regularly cited, were bound to appear in court, and to take notice of the day appointed to that effect by the Judge, on which their answers should be taken, in order to be prepared to comply with the prayer of the plaintiff’s petition. Code of Pract. art. 351. No day, however, was appointed by the court, a qua ;■ one of the garnishees answered, ex parte, and in writing, and the interrogatories were taken, pro confessis, as to the two others. This was clearly irregular and illegal. We have repeatedly held, that whenever a party thinks proper to propound interrogatories to his adversary to be answered in open court, he is bound to move the court to appoint a day to that effect; that his neglecting to do so, dispensed the party interrogated from the obligation of appearing ; and that, by proceeding to trial without procuring the appointment of a day, the party interrogating waived his right to his adversary’s answer to the interrogatories. 2 La. 72. 14 lb. 299. A day must be fixed, and it is not sufficient that the party interrogated should be called upon to answer the interrogatories in open court within ten days from the service thereof, which is the legal delay for answering to the petition, (Code of Pract. arts. 252 and 262,) or within any other period not amounting to the appointing of a special day to that effect, as required by law.
A point has been made, however, that, in cases of attachment, the law does not authorize garnishees to be interrogated to an *449 swer in open court, (Code of Praet. arts, 247, 263,) and that therefore art, 351 does not apply ; and this appears to have been the view taken by the Judge, a quo, when, seeing that two of the garnishees had not answered in writing, he took the interrogatories, pfo confessis. On the part of the plaintiff, it has been insisted, that the words of the Judge’s order “ according to law” meant that the interrogatories should have been answered in writing, and that the garnishees were bound to do so, ex parte ; and, on the part of the appellants, it has been contended that, as the garnishees had been required to answer in open court, which is not permitted by law in cases of attachment, they were not bound to answer at all.
"We think both positions are erroneous, and that, in cases of attachment, as well as in any other case, a party interrogated on facts and articles may be required to answer interrogatories in open court. Art. 247 provides, it is true, that a creditor may annex to his petition interrogatories on facts and articles, to be answered categorically under oath by the garnishee, as to the nature of the property belonging to the defendant, &c., and so does art. 348 with regard to the right which one of the parties ■ to a suit has to interrogate the other; but garnishees, in cases of attachment, or in a proceeding of this kind, though not parties to the original suit, are properly parties to the controversy that arises between them and the defendant’s creditor, with respect to the object of the proceeding ;■ (Code of Praet. arts. 2oO and 246 ;)' they have their rights to defend; they are necessarily litigating their rights with those which a creditor of the principal defendant seeks to enforce, or exercise upon property in their possession ; and, so much so, that they may be condemned to' abandon said property for the benefit of another, to suffer it to be seized and sold, or, as in this case, to pay the whole amount of the debt. They are parties to this litigation, adversaries of the seizing or attaching creditor, and art. 351 of the Code, making no distinction, sa^s ; “ 'The party propounding interrogatories may require the party interrogated to answer in open court, &c.” Here, the garnishees were the parties interrogated; there is nothing in art. 247 and 263, which dispenses them from answering in open court; nay, the article does not indicate in what *450 manner their answers should be taken or received; and we are of opinion, that they would have been bound to answer in open court, if a day had been appointed by the Judge for that purpose.
With this view of the question, we conclude that the judgment appealed from was improperly rendered; but, as the counsel of the parties, and the Judge, a quo, seem to have been under different impressions with regard to the manner in which the interrogatories propounded by the plaintiff were to be answered, which we consider erroneous, we think this cause ought to be remanded to the lower court for further proceedings according to the views above expressed*
It is, therefore, ordered and decreed, that the judgment of the District Court be annulled and reversed; and that this cause be remanded to the inferior court, to be proceeded in according to law, the appellee paying the costs of the appeal.