No. 2908.

PHILIBERT ROGAY v. J. M. JUILLIARD and LOUIS SCHNEIDER.

Where in the motion to appoint a curator ad hoc to the defendant, who is a non-resident, it is simply stated that he is absent and not represented, and where said defendant has not been proceeded against by attachmen·, and it has not been alleged or proved that he has or had, when the suit was instituted, any property within the jurisdiction of the court before whom the suit was brought;

Held—That this is not sufficient, and that the suit can not be maintained.

A surety on an arrest bond can not escape his responsibility, because his principal has put himself beyond the jurisdiction of the court.

Where a final judgment was ren ered, on the twelfth of April, 1869, against Juilliard, in the case of Juilliard v. Rogay, in which Juilliard had caused Rogay to be arrested on the ground of his departing permanently from the State without leaving therein sufficient property to satisfy the demand of his creditor;

Held—That the prescription of one year can not be opposed by the surety on Juilliard's arrest bond against a suit instituted by Rogay on the fourth of December, 1869, to recover damages for his unlawful arrest in November, 1865, because his right of action did not accrue until the final judgment in his favor was rendered. Besides, it is not an action arising ex delictu. It is a suit upon a bond. It is an obligation entered into by the signers thereof, and can, therefore, be considered only as an obligation to be prescribed by the laws regulating the prescription of obligations, and not by the laws regulating the prescription of actions for damages arising from the commission of offenses or quasi offenses.

Where it was objected to the claim for damages that the arrest of plaintiff on the ground that he was departing permanently from the State without leaving therein sufficient property to satisfy the demand against him, was not done with malice, but was the exercise of a mere legal right prosecuted in the form authorized by law, and, therefore, that the defendant could not be responsible on damages;

Held—That this objection is not valid.

APPEAL from the Fourth District Court, parish of Orleans. *Théard*, J. *A. & P. J. Robert* for plaintiff and appellee. *Fergus Fuselier*, curator ad hoc, for Juilliard. *A. Voorhies* for Louis Schneider, defendant and appellant.

MORGAN, J. In November, 1865, Juilliard instituted suit against Rogay, to recover from him some $17,000, the value of seventy bales

of cotton, alleged to have been purchased for Juilliard by Rogay, with funds belonging to Juilliard, which cotton, it was alleged, had been received and disposed of by Rogay, the proceeds of sale thereof not having been accounted for.

Alleging further, that Rogay was about to depart, permanently, out of the State, without leaving a sufficient amount of property therein to satisfy his demand, Juilliard applied for and obtained a writ of arrest against him, and furnished his bond, in the sum of $26,500, to respond to such damages as Rogay might recover, in case it should be decided that the writ of arrest which he had obtained wrongfully issued.

There was judgment in Rogay's favor. See the case of Juilliard v. Rogay, 21 An. 259. This suit is now instituted by Rogay against Juilliard and Schneider, principal and security on the arrest bond, to recover from them ten thousand dollars damages, caused by his wrongful arrest.

He had a judgment for $1000 against them, in solido, and they have appealed:

The first objection is well taken. Juilliard is a non-resident. He has not been proceeded against by attachment, and it has not been alleged, or proved, that he has, or had when this suit was instituted, any property within the jurisdiction of the court before whom the suit was brought. In the petition it is alleged, that although absent, he is represented by an agent, which does not appear to be the fact. In the motion to appoint a curator to represent him, it is simply stated that "the defendant herein is absent, and not represented." This was not sufficient to give the court jurisdiction. It is contended that this case should be governed by the case of Field v. Delta Co., 19 An. 3·, but we do not think it applies. In that case it was alleged in the petition, that the defendant, though absent, had property within the jurisdiction of the court. To this petition exception was taken. On the trial of the exception, the allegations were taken as true; and it was upon the ground that the defendant had property within the jurisdiction of the court, that the appointment of the curator was considered proper. None of these facts occur in this case.

As against Juilliard, therefore, the suit should have been dismissed.

It is different as to Schneider. He was the surety on the arrest bond, and is as much bound thereon as Juilliard was. He can not escape his responsibility, because his principal has put himself beyond the reach of the court. He, as well as Juilliard, bound himself to respond to such damages as might be caused by the arrest of the plaintiff, in case it should be decided that the arrest was improperly obtained; and that the arrest was improperly obtained has already been decided, by the final judgment rendered in Rogay's favor, in the suit in which the writ of arrest issued.

To the plaintiff's right of action, he pleads the prescription of one year, alleging that the demand made against him is one sounding in damages. Final judgment was rendered in the case of Juilliard v. Rogay on the twelfth April, 1869. This suit was instituted on the fourth December, 1869. His right of action did not accrue until the final judgment in his favor was rendered. Besides, this is not an action arising *ex delictu*. It is a suit upon a bond. It is an obligation entered into by the signers thereof, and can, therefore, be considered only as an obligation, to be prescribed by the laws regulating the prescription of obligations, and not by the laws regulating the prescription of actions for damages arising from the commission of offenses or quasi offenses.

His real objection is, that inasmuch as the suit of Juilliard v. Rogay was not prosecuted with malice, but was the exercise of a mere legal right, prosecuted in the form authorized by law, he can not be held responsible therefor. He relies on art. 212, C. P., which prescribes that "any creditor, whose debtor is about to leave the State, even for a limited time, without leaving in it sufficient property to satisfy the judgment which he expects to obtain in the suit he intends to bring against him, may have the person of such debtor arrested and confined, until he shall give sufficient security that he shall not depart from the State without the leave of court."

This article does not give to the party claiming to be a creditor the right to arrest his debtor, under the conditions therein stipulated; but this right is coupled with the obligation of responding in damages to the party arrested, in case it should be determined that the arrest was improperly ordered; and it is the existence of indebtedness which gives rise to the remedy of arrest. If no debt existed, the arrest would have been illegal; and the judgment in the case is the test of the existence of the debt.

It would be something intolerable, if any person, pretending to have a claim against his neighbor, could cause him to be arrested because he proposed leaving the State, and, when it should have been decided that he had no cause of complaint against him, shield himself from a demand for damages upon the plea that he was not actuated by malice—that he meant to do no harm. A man's liberty is too sacred a right to be thus trifled with.

In the present case the plaintiff was in this city on his way to France, where he proposed to invest what means he had in some of the manufactured articles of that country, which he proposed to bring here. He was arrested at the suit of Juilliard, Schneider becoming surety on Juilliard's bond, which was required before the writ of arrest issued. Rogay was taken to prison, where he remained for more than two days and nights. He was then only released upon giving heavy bonds, and

to secure his bondsman from loss he pledged with him all the property he had. His means being thus locked up, he could not have left here even if he would have been allowed to do so. Although out of jail he was still practically a prisoner in New Orleans, and paralyzed in every commercial way. The suit was decided in his favor. The best evidence of his intention to go to France, buy goods and return here is, that as soon as the case was decided for him he did go to France, and shortly after returned here. While his property remained subject to the obligation of his bondsman it depreciated largely in value; during his stay here, pending the suit, he necessarily was at an expense. To defend his suit, according to his own testimony, which is uncontradicted, he spent $500 in counsel fees and several hundred dollars more in procuring documentary evidence and the depositions of witnesses away from New Orleans. The judge of the lower court gave him a judgment for $1000, and we do not see how he could have awarded him any less.

As to Juilliard, as we have before said, he can not be condemned, because he is not properly before the court.

It is therefore ordered, adjudged and decreed that the judgment of the lower court in so far as it renders a decree against Juilliard be annulled, avoided and reversed, and the suit as against him be dismissed.

It is further ordered, adjudged and decreed that as against Schneider the judgment be affirmed, Schneider to pay the costs in both courts.

Rehearing refused.